UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **DALE FRANCIS McKISSICK**<br>    **LA. DOC #415681**<br>**VS.** | **CIVIL ACTION NO. 3:15-cv-0133**<br><br>**SECTION P**<br><br>**JUDGE ROBERT G. JAMES** |
| **WYDETTE WILLIAMS, ET AL.** | **MAGISTRATE JUDGE KAREN L. HAYES** |

REPORT AND RECOMMENDATION

*Pro se* plaintiff Dale Francis McKissick, proceeding *in forma pauperis*, filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on January 23, 2015. When he filed this complaint he was a prisoner in the custody of the Louisiana Department of Corrections (DOC) who was confined at the Claiborne Parish Detention Center (CPDC); however, he complained about incidents that occurred when he was incarcerated at the River Bend Detention Center (RBDC). He sued East Carroll Parish Sheriff Wydette Williams, RBDC Warden Johnny Hedgeman, and Lt. Christopher Jones. He prayed for an order directing the Federal Bureau of Investigation to conduct an investigation at RBDC and for compensatory damages. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court. For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted.

*Statement of the Case*

Plaintiff, a DOC inmate, was employed as inmate counsel at RBDC. Beginning some time prior to January 23, 2014, plaintiff began complaining about thefts of his personal property

by his fellow inmates; he complained that these thefts occurred during Lt. Christopher Jones's shift. Approximately two weeks prior to January 23, 2014, Lt. Jones searched plaintiff's locker box and bed area in the H-Dorm; Jones confiscated several items of plaintiff's personal and "litigation property," including a complaint that plaintiff had prepared against Jones and his subordinates which was in a stamped envelope addressed to Sheriff Williams. Lt. Jones also seized clerical/legal supplies belonging to RBDC which were found in plaintiff's locker box, and, which, according to plaintiff, were pleadings plaintiff had prepared on behalf of other inmates. Jones then ordered plaintiff to carry these RBDC legal/clerical supplies to the law library. Plaintiff complied. Jones began "threatening" him "stating he knows all about the complaints [plaintiff] told to Captain Russell and Warden Hedgeman and previously mailed to Sheriff Williams via U.S. Cert. Mail..." Thereafter, in the ensuing two weeks Jones issued a Rule Violation Report charging plaintiff with a prison rule violation; Jones also told other inmates that plaintiff was a "rat" for complaining to the Warden.

On January 23, 2014, at 5:35 p.m., plaintiff was "... maced ... in the face and forehead and eyes..." by Assistant Lt. Jones as plaintiff was returning to his dorm from the prison law library. Plaintiff advised Lt. Lee that he had been "maced" and requested medical assistance from Lee and Jones. His request was denied and he was ordered to return to his dorm. Upon arrival at the dorm, plaintiff advised Captain Gibson that he had been "maced" and declared a medical emergency. Lt. Jones grabbed plaintiff's uniform, twisted his arm, told him to be quiet and pushed him into the H-Dorm interlock. Gibson did not reply or intervene. Once in the dorm plaintiff requested medical attention from the dorm officer but he ordered plaintiff to return to his bunk. When plaintiff requested a medical request form he was told to get a wet towel since it was

close to shift change. Plaintiff got a wet towel and washed his face, forehead, eyes and hair, but that only aggravated the burning sensation. He was again ordered to return to his bunk until shift change.

After an unspecified period of time elapsed and the shift had changed, plaintiff complained to the officers and was advised to sit at the table in front of the dorm and await Lt. Crye. Plaintiff advised Crye of his situation and Crye advised that he would inform Lt. Newsom. During this time plaintiff had access to running water and he continued to rinse and wash the affected areas. Plaintiff obtained a medical request form but his vision was blurred and he was unable to fill out the form.

Eventually plaintiff spoke to Lt. Newson who ordered plaintiff to exit the dorm while he "looked into" the situation. Newsome returned and advised plaintiff to continue rinsing the affected area with water. Plaintiff continued to complain about the excessive force and denial of medical care and Newson eventually ordered him to return to his dorm. At that point plaintiff complained that Lt. Jones had confiscated "some of [plaintiff's] pro se appeals, certified and stamped legal work and personal property." Plaintiff continued to rinse the affected area and the drains in the dorm began to back up. Several unidentified Sheriff's deputies entered the dorm and questioned inmates and maintenance personnel who had been called in to address the drain problem. Plaintiff complained to these deputies that he was the victim of excessive force and thereafter denied medical attention. Plaintiff was then escorted to the front of the dorm where he complained to Captain Ussell (or Ursell or Urquell); the Captain advised that he would investigate plaintiff's complaints. Plaintiff voiced concerns that he would be transferred but the Captain advised that he would not be transferred and that the investigation would proceed. Once

the Captain exited the dorm plaintiff returned to his bunk where he "... continued to suffer throughout the night from burning and fear, stress, anxiety, headache, and hardships ..."

Sometime between January 23 and February 17, 2014 plaintiff was transferred to CPDC. According to plaintiff, on February 17, 2014, he submitted (via Certified U.S. Mail, return receipt requested) a 5 page hand-written Administrative Remedy Procedure (ARP) grievance via Certified Mail outlining the events of January 23, 2014, as set forth above.[1] In his grievance, plaintiff also claimed that he did not know why Jones "maced" him, but he did note that during the weeks before the January 23 incident that Jones had accused him of being a "rat" when plaintiff complained about inmates stealing from his locker box while he was in the law library. He further complained that the Sheriff and Warden failed to properly supervise or train Jones. He also complained about other unrelated events involving other inmates at RBDC. He concluded the grievance with a demand that the defendants set a time for a deposition during which time they should be prepared to discuss compromise and resolution and "private settlement." He also requested the installation of a surveillance system in the prison, the transfer of inmate Jason Duhe, and, in the alternative he requested that he be provided "first, second and third step ARP responses..." [Doc. 1-1, Exhibit B, pp. 4-8]

In a letter dated March 24, 2014 Warden Hedgemon advised plaintiff that "you never file[d] a grievance form within the facility about these issues." He then directed plaintiff to submit the appropriate form. [Doc.1-1, Exhibit A, p. 3] On June 30, 2014 Warden Hedgemon sent an "Internal Memorandum" to plaintiff claiming that plaintiff's "Communication" dated June 25, 2014, which demanded monetary compensation and "receipt and release" and which

---

[1] Plaintiff did not provide a copy of the receipt showing delivery of the document.

complained of a lack of follow-up with respect to previously submitted ARPs would not be considered since it was not filed within 90 days of the complained of events. The document concluded that plaintiff's claims were not only deemed abandoned, but also without merit as established by the prison's own investigation. [Doc. 1-1, Exhibit A, pp. 1-2[2]]

*Law and Analysis*

*1. Screening*

Plaintiff is a prisoner who has been permitted to proceed *in forma pauperis.* As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A. *See Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir.1998) (*per curiam*). Because he is proceeding *in forma pauperis,* his complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2) (B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

---

[2] According to Warden Hedgemon, plaintiff's claims were previously addressed and rejected. As to the claims of stolen property, Hedgemon noted, "Your account history and property records show that you did not arrive with the items you 'claimed were stolen' and did not [accrue] enough monies to make the purchases you claimed. Your allegations are completely fictitious and an abuse of the grievance process."

With regard to the excess force claim, Hedgemon observed, "The documentation for the [RBDC] clearly shows that you were combative, failed to follow several direct orders, made [threatening] gestures toward correctional staff. Your acts and omission compromised the safety of my Correctional Officer[s], Offenders, and undermined the safe and orderly operations of the facility. The self-serving conclusory assertions you make belie the evidence, are not credible, and merely attempt to contradict the credibility of the Correctional Staff who have no reason or motives to make fabricated statements or deploy the chemical agents but for the proximate causes of your own actions." [Doc. 1-1, p. 2]

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

*2. Excessive Force*

Plaintiff complains that Lt. Jones used excessive force when he sprayed him with "mace" (presumably some form of chemical agent) on January 23, 2014. An excessive force claim arises under the Eighth Amendment's prohibition against cruel and unusual punishment. In evaluating such a claim under the Eighth Amendment the issue is whether the force alleged was applied maliciously and sadistically for the very purpose of causing harm, or whether the application of force was merely a good faith effort to maintain or restore discipline. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010), quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). The factors to be considered in determining whether the force applied was excessive include (a) the extent of injury sustained, if any, (b) the need for the application of force, (c) the relationship between the need for force and the amount of force utilized, (d) the threat reasonably perceived by prison officials, and (e) any efforts made to temper the severity of a forceful response. *Hudson v. McMillian, supra*, 503 U.S. at 7.

The United States Supreme Court has held that while the malicious and sadistic use of force to cause harm is actionable, "[t]hat is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson*, 503 U.S. at 9. Rather, "[t]he Eighth

Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id.* at 9-10 (internal quotation marks omitted).

In its application of that maxim, the Fifth Circuit has held "... to support an Eighth Amendment excessive force claim a prisoner must have suffered from the excessive force a more than *de minimis* physical injury, but there is no categorical requirement the physical injury be significant, serious, or more than minor." *Gomez v. Chandler*, 163 F.3d 921, 924 (5th Cir.1999).

Accepting plaintiff's allegations as true, he has not demonstrated that the force used by defendants was applied maliciously and sadistically to cause harm, as is required for a viable excessive force claim. Plaintiff alleged that Jones maced him "without legal cause" because at the time of the incident he was not damaging property, or threatening anyone. [Doc. 1, ¶IV] This claim is in sharp contrast to Warden Hedgemon's version of events, however. As noted previously, Hedgemon maintained, that plaintiff was "... combative, failed to follow several direct orders, made [threatening] gestures toward correctional staff." Hedgemon also opined that plaintiff's behavior "... compromised the safety of my Correctional Officer[s], Offenders, and undermined the safe and orderly operations of the facility." Hedgemon supported his conclusion by noting, "The self-serving conclusory assertions you make belie the evidence, are not credible, and merely attempt to contradict the credibility of the Correctional Staff who have no reason or motives to make fabricated statements or deploy the chemical agents but for the proximate causes of your own actions." [Doc. 1-1, p. 2]

More importantly, the pleadings suggest that the force applied by the defendant was, under the circumstances, minimal. Indeed, plaintiff has not demonstrated that he suffered ANY

lasting injury much less a *de minimis* injury resulting from the force employed. As noted above, in his prayer for relief, plaintiff implied that he suffered "pain and suffering"; however, he did not describe any other short term or long term physical injury other than discomfort which lasted into the evening.

In short, it appears that plaintiff alleged only mental and emotional injury as a result of the complained of event and such a claim standing alone does not state a claim for which relief may be granted. Title 42 U.S.C.§1997e(e), provides"[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." The "'physical injury' required by § 1997e(e) 'must be more than *de minimus* [sic], but need not be significant.'" *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir.1999) (quoting *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir.1997)) (alteration in original).

Finally, plaintiff seems troubled by the harsh and abusive language used by the defendant. However, verbal threats, without more, do not support a claimed constitutional violation. *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir.1997); *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir.1983). Further, plaintiff's allegation that he was otherwise verbally abused, while regrettable, does not state a claim of constitutional dimension. Allegations of mere verbal abuse by prison guards simply do not give rise to a cause of action under § 1983. *Bender v. Brumley*, 1 F.3d 271, 274 n. 4 (5 Cir.1993), *Siglar v. Hightower*, 112 F.3d 191 (5 Cir.1997.

In short, plaintiff has failed to state a claim for which relief may be granted.[3]

---

[3] Finally, in addition to money damages, plaintiff also prayed for an investigation by the F.B.I., and such relief is not available in this action.

*2. Medical Care*

Plaintiff also complained that he was denied prompt and adequate medical care in the aftermath of the incident. Plaintiff's medical care claim also arises under the Eighth Amendment's prohibition against cruel and unusual punishment. However, plaintiff's medical care claim amounts to an Eighth Amendment violation only if he can establish deliberate indifference resulting in substantial harm. *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006). The facts underlying a claim of deliberate indifference must clearly establish the serious medical need in question and the alleged indifference of the prison officials. *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985).

"A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Gobert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006). "Deliberate indifference is an extremely high standard to meet." *Domino v. Texas Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001). "[T]he plaintiff must show that the officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id*. (internal quotation marks and citation omitted). "[M]ere negligence, neglect, or medical malpractice" do not constitute deliberate indifference. *Varnado*, 920 F.2d at 321. Even "gross negligence" does not establish deliberate indifference. *Hernandez v. Tex. Dep't of Prot. and Reg. Servs.*, 380 F.3d 872, 882 (5th Cir. 2004).

Plaintiff complains that he was deprived of prompt and appropriate medical care following his exposure to chemical mace. However, he does not allege what type of medical care

would have been appropriate under the circumstances. It does appear that he was allowed to wash the irritant from his eyes and face and head shortly after the incident. Plaintiff has not alleged what additional treatment if any, was called for and denied to him. Clearly the corrections officers identified in his complaint believed that plaintiff need only wash the affected areas to alleviate the irritation caused by the chemical agent. It appears that plaintiff disagrees with their treatment plan.  His disagreement with diagnosis or treatment choices falls far short of establishing deliberate indifference since mere disagreement with medical diagnosis or treatment does not state a claim under the Eighth Amendment. *See Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir.1997), citing *Young v. Gray*, 560 F.2d 201, 201 (5th Cir.1977); *Spears v. McCotter*, 766 F.2d 179, 181 (5th Cir.1985).

*4. Parratt/Hudson Doctrine*

Plaintiff claims that items of his personal property were stolen prior to January 23, 2014, by his fellow inmates. He implies that Lt. Jones permitted the theft. He also implies that Jones stole other items of personal property from him on January 23.

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States." *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). Plaintiff does not explicitly identify a specific Constitutional violation; however, his claim implicates the due process clause of the Fourteenth Amendment. The Due Process Clause provides "nor shall any State deprive any person of life, liberty, or property, without due process of law." United States Constitution, Amendment XIV.  Here, plaintiff implies that he was deprived of property without due process by the defendants.

A claim for random deprivation of personal property is not cognizable under §1983.  In

*Parratt v. Taylor*, 451 U.S. 527, 544, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), a prisoner claimed that prison officials had negligently deprived him of his personal property without due process of law. The Supreme Court held that the prisoner was "deprived" of his property within the meaning of the Due Process Clause of the Fourteenth Amendment, but the Court ruled that the State's post-deprivation tort remedy provided all the process that was due. *Id.,* 451 U.S. at 536-37, 101 S.Ct. at 1913.

The Due Process Clause does not embrace tort law concepts. Although a litigant may be afforded a remedy under state tort law for deprivation of property, the Fourteenth Amendment does not afford such a remedy. *Daniels v. Williams,* 474 U.S. 327, 335, 106 S.Ct. 662, 667, 88 L.Ed.2d 662 (1986). Even in instances where intentional deprivation occurs, where an adequate state post-deprivation remedy is available, the Due Process Clause is not implicated, so long as the deprivation was "random." *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); *Davis v. Bayless*, 70 F.3d 367 (5th Cir. 1995); *Murphy v. Collins*, 26 F.3d 541 (5th Cir. 1994).

This principle (known as the *Parratt/Hudson* doctrine) rests on the premise that because the state is unable to predict random and unauthorized conduct, pre-deprivation remedies are unfeasible. *Davis*, 70 F.3d at 375, citing, *Zinermon v. Burch*, 494 U.S. 113, 128-32, 110 S.Ct. 975, 985-86, 1098 L.Ed.2d 100 (1990) (distinguishing between random unauthorized conduct and a deprivation which results from predictable conduct authorized by a State).

In this case, plaintiff's allegations, accepted as true for purposes of this evaluation, demonstrate that a random and unauthorized deprivation occurred when various items of plaintiff's property were stolen. Thus, since plaintiff's losses were the result of random and

unauthorized deprivations, he is not entitled to relief pursuant to §1983 if adequate state law remedies are available.

Louisiana law provides plaintiff the opportunity to seek redress for either the negligence or for the intentional torts committed by the defendants. See La. Civil Code article 2315. This provision of state law, which is the general tort provision of Louisiana's Civil Code provides all the process that is required, and thus, the Fourteenth Amendment is not implicated. *Charbonnet v. Lee*, 951 F.2d 638 (5th Cir.), *cert. denied*, 505 U.S. 1205, 112 S.Ct. 2994, 120 L.Ed.2d 871 (1992). Indeed, it appears from the pleadings that plaintiff has in fact filed a civil action in the Louisiana court and that he is presently litigating this very issue in that forum.

A liberal construction of plaintiff's complaint fails to support a constitutional violation; plaintiff's claim is clearly barred by the *Parratt/Hudson* doctrine. Plaintiff's claim lacks an arguable basis in law and therefore his complaint should be dismissed as frivolous.

## 5. *Access to Courts*

Finally, plaintiff implies that as a result of the seizure of his personal property, the defendants have interfered with his right of access to the Courts. "It has long been recognized that prisoners generally enjoy the constitutional right of access to the court." *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir.1999); *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *Johnson v. Avery*, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969). The right of access to the court is not unlimited, however, and includes "only a reasonable opportunity to file non-frivolous legal claims challenging [the prisoners'] convictions or conditions of confinement." *Id.* (citing *Lewis v. Casey*, 518 U.S. 343, 351, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996)). Put another way, "[w]hile the precise contours of a prisoner's right of access to the courts remain somewhat

obscure, the Supreme Court has not extended this right to encompass more than the ability of an inmate to prepare and transmit a necessary legal document to a court." *Brewer v. Wilkinson*, 3 F.3d at 821; *Lewis v. Casey*, 518 U.S. at 351, 116 S.Ct. at 2179-81; *Norton v. Dimazana*, 122 F.3d at 290; and *Eason v. Thaler*, 73 F.3d 1322, 1329 (5th Cir.1996). Plaintiff has not shown how his ability to prepare and transmit legal documents has in any way been inhibited as a result of the action or inaction of any of the named defendants.

Furthermore, in order to state a claim based on the denial of a prisoner's access to the courts, a plaintiff must show actual injury. *See Lewis v. Casey*, 518 U.S. 343, 351-54, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). He must "demonstrate[ ] that his position as a litigant was prejudiced by his denial of access to the court." *Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir.1996) (*per curiam*) (citing *Walker v. Navarro County Jail*, 4 F.3d 410, 413 (5th Cir.1993)). This requirement that a claimant show "actual injury" is "not satisfied by just any type of frustrated legal claim." *Lewis*, 518 U.S. at 354.

Plaintiff has not shown that he was prejudiced in his ability to litigate this law suit or any other with respect to the alleged fault of the defendants. He can identify no prejudice resulting from the alleged loss of documents and supplies. Plaintiff's access to courts claim is frivolous and fails to state a claim for which relief may be granted.

### *Recommendation*

Therefore, considering the foregoiong,

**IT IS RECOMMENDED THAT** plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted in accordance with the provisions of 28 U.S.C. §§1915 and 1915A.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See, Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

In Chambers, Monroe, Louisiana, October 22, 2015.

_____
**KAREN L. HAYES**
**UNITED STATES MAGISTRATE JUDGE**